UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

_____X

SANDRA L. MACAULAY, AS ADMINISTRATRIX          CIVIL ACTION
FOR THE ESTATE OF CHRISTOPHER A.
MACAULAY,                                                          NO. 07 CA 10864 NG

    Plaintiff

VS.

MASSACHUSETTS BAY COMMUTER
RAILROAD COMPANY,

    Defendant                                                     FEBRUARY 14, 2008

_____X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## HER MOTION TO COMPEL PRODUCTION AND DISCOVERY RESPONSES

      Pursuant to Fed. R. Civ. P. 37 and D. Mass. Loc. R. 37.1 the plaintiff hereby

submits this Memorandum of Law in support of her Motion to Compel.  The plaintiff

seeks to compel the defendant to provide responsive documents and materials to the

plaintiff's October 22, 2007 dated Requests for Production (RFP) 1, 3, 7, 9, 10, 12, 13,

16, 17, 18, 20, 21, 27, 31, 37, 38, 39, 40, 41, 42 and 43 and Interrogatories 9, 10, 14,

15 and 16.

      The plaintiff certifies he conferred in good faith with defense counsel, Colleen

Cook, on January 18, 2008 from 2:30 p.m. to 3:40 p.m. and on February 13, 2008 from

**ORAL ARGUMENT REQUESTED**

3:05 p.m. to 3:25 p.m.   The parties were not able to resolve their differences.   *See* Appendix A.

## I. NATURE OF CASE

The plaintiff, Sandra Macaulay, is the administratrix for the estate of Christopher Macaulay.  She brings this case under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. for damages resulting from defendant MBCR's negligence.   Plaintiff alleges that at approximately 1:40 p.m. January 9, 2007 her husband was working as a trackman with a track maintenance crew on the track in Woburn, Massachusetts when an MBCR passenger train unexpectedly came down the track and killed her husband. The train was traveling southbound at approximately 60 miles per hour and Christopher Macaulay was on the south side of a piece of track equipment when the train struck the track equipment.  Another co-worker in the track crew was killed and two other workers were seriously injured.

MBCR claims the decedent was negligent.  Specifically, MBCR claims

> plaintiff's decedent was aware that shunting barricades had not been erected as required by MBCR rules (see MBCR Roadway Worker Protection Rule 132, Special Instruction 133-S1).  Plaintiff's decedent failed to report that the shunting barricades had not been erected in violation of MBCR RWP Rule 313.   In addition, plaintiff's decedent assumed the risk of working without the protection of shunting barricades. Moreover, . . . plaintiff's decedent was negligent in failing to observe and hear the train in adequate time to get out of the way of the oncoming train.

MBCR's January 10, 2008 Interrogatory Answers, p. 8.

The plaintiff will prove MBCR was negligent in various ways including, but not limited to, the following:

> 1. The dispatcher negligently allowed the train on a track where she knew a work crew was located;
> 2. MBCR negligently had a practice of not using shunting devices on small jobs such as the one being performed at the time of the accident;
> 3. MBCR negligently failed to enforce its rule requiring the use of shunting devices;
> 4. The MBCR negligently failed to provide its crews with working shunting devices;
> 5. The engineer failed to sound the horn for a reasonable time period after he observed the work equipment on the tracks;
> 6. The engineer negligently failed to sound the horn in violation of MBCR Rule 19(b)B when he knew roadway workers may be working;
> 7. MBCR negligently failed to protect small maintenance crews with an advanced watchman and/or gang watchman to provide proper warning; and
> 8. MBCR negligently failed to provide advance watchmen and/or watchmen when crews consist of less than seven workers in violation of MBCR RWP Rule 329

The decedent began working for MBCR in 1995 and was 30 years old at the time of his death.  He is survived by his wife and two-year-old daughter, Bailee Macaulay. The plaintiff seeks to recover damages for (a) the loss of support and other financial benefits they would have received from the defendant; (b) the loss of services which would have been provided to them by the decedent; and (c) in the case of the decedent's minor child Bailee, the loss of the decedent's care, attention, instruction, training, advice, and guidance. *See* Sand, *4 Modern Federal Jury Instructions*, §89-29 (2006).

## II. LAW

### A. Reasonably Calculated To Lead to The Discovery of Admissible Evidence

Plaintiff's requests and interrogatories need only be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

### B. Work-Product Doctrine

"The burden is on the party resisting discovery to establish that the documents are protected by work product. . . .  In order to qualify for protection under the work product doctrine, the material in question must (1) be a document or tangible thing; (2) which was prepared in anticipation of litigation; (3) be prepared by or for a party, or by or for its representatives . . . .  A 'dual purpose' document may be protected by work product if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." (Cites and quotations omitted) *Amica Mutual Ins. Co. v. W.C. Bradley Co.*, 217 F.R.D. 79, 82-83 (D. Mass. 2003).  Documents prepared and obtained in the ordinary course of business do not constitute work-product. *Amica Mutual Ins.*, 217 F.R.D. at 82; *Pasteris v. Robillard*, 121 F.R.D. 18, 20 (D. Mass. 1988); *Sham v. Huannis Heritage House Hotel, Inc.*, 118 F.R.D. 24, 26 (D. Mass. 1987).  Investigations by insurance companies are not per se conducted in anticipation of litigation as opposed to the ordinary course of business and the Courts should make a determination on a case-by-case basis. *Amica,* 121 F.R.D. at 82.

## III. REQUESTS AT ISSUE

**Request No. 1:**
The Defendant's Medical Department's/Occupational Health Services Department's full and complete medical file pertaining to the plaintiff's decedent, including but not limited to all notes, reports, emails, telephone logs, medical questionnaires and correspondence pertaining to plaintiff's decedent. Copies of all email messages regarding the plaintiff must be printed out and included in this production.

**Response:**
MBCR objects to this request to the extent the terms "Medical Department's/Occupation Health Services department is undefined and therefore it is vague and ambiguous. Notwithstanding this objection and subject to the foregoing General Objections, MBCR will produce medical records of plaintiff's decedent relating to the subject accident to the extent any exist.

The plaintiff is entitled to all the decedent's medical records in possession of the

MBCR.  These records may help establish the decedent was in exceptional health and

likely to live beyond a typical life expectancy or be used to rebut any arguments MBCR

might make that the decedent's life expectancy would have been shorter than a typical

person his age.  During the Rule 37 conferences, undersigned counsel made it clear

the plaintiff seeks all medical documents in MBCR's possession but MBCR refused to

withdraw its objections and produce all responsive documents.   Accordingly, MBCR

should be compelled to produce all responsive medical documents to this request.

**Request No. 3:**
The Defendant's Personnel Department's full and complete personnel file pertaining to the plaintiff's decedent, including but not limited to any and all accident and injury reports pertaining to any prior injuries or claims.

**Response No. 3:**
MBCR objects to this request to the extent the term "Personnel Department's "is undefined and therefore it is vague and ambiguous.  Notwithstanding this objection and subject to the foregoing General Objections, MBCR will produce a copy of plaintiff's decedent's personnel file.

To date, MBCR has not produced the decedent's entire personnel file.  Most railroads maintain promotion/job history records, job reviews, performance reviews, job application, disciplinary records and training records in an employee's personnel file.  For some reason MBCR pretends not to know what records it keeps in its own files.  The request is not vague or ambiguous and MBCR should be compelled to produce the decedent's entire personnel file.  Since the decedent cannot testify about his work history, career plans, and promising future at MBCR, the plaintiff seeks these records to help prove the was an exceptional employee with a promising future at MBCR who was likely to be promoted during the course of his career.

**Request No. 7:**
The Defendant's Safety Department's full and complete file pertaining to the accident which forms the basis of the present complaint including but not limited to all e-mails, personal injury reports, inspection reports, reports of investigation and notes.  Copies of all e-mail messages regarding the plaintiff must be printed out and included in this production.
**Response No. 7:**
MBCR objects to this request on grounds that it seeks documents protected by the attorney-client privilege and work product doctrine.  Notwithstanding this objection and subject to the foregoing General Objections, MBCR will produce non-privileged documents responsive to this request to the extent they exist.

To date, MBCR has not produced any accident reports from this two fatality accident.  In fact, MBCR has produced a total of about seven half-page statements pertaining to its investigation of the accident.  One statement is two-pages and the plaintiff requested a legible copy of the second page and MBCR has refused to produce a legible copy of the second page (Bate stamped 0024).  This cannot be the complete

Safety Department file involving a train accident that resulted in two fatalities and two

employees suffering serious injuries.  The Court should compel MBCR to produce all

responsive documents.

### Request No. 9:
The Defendant's Police Department's full and complete file, reports, and documents pertaining to the accident which forms the basis of the present complaint including but not limited to all initial reports of the plaintiff's injury, radio records, dispatcher daily reports, the Chief Train Dispatcher's Office Initial Report of Personal Injury, and all handwritten notes.
### Response No. 9:
MBCR objects to this request to the extent the term "Police Department" is undefined and therefore is vague and ambiguous.  Notwithstanding this objection and subject to the foregoing General Objections, MBCR will produce non-privileged documents responsive to this request to the extent they exist.

During the parties' second Rule 37 conference, undersigned counsel explained that the

plaintiff sought any police records, police reports or police documents in MBCR's

possession, custody or control. The defendant/MBCR operates the rail service under a

contract with the MBTA and relies on the MBTA transit police to provide police services for

its rail operation.  MBCR refused to provide any such materials.   Accordingly, the plaintiff

seeks an Order compelling production of all responsive documents including those in its

possession that may have been prepared by the MBTA.

### Request No. 10:
All injury and accident investigative and inspection reports, records, documents, notes, e-mails, and findings pertaining to the accident that forms the basis of the present complaint, including but not limited to any Informal Investigation Sheet, Summary Report of Personal Injury, Accident/Injury Report, Personal Injury Report, Supervisor's Injury Report, Three-Man Reports and Committee Reports (and all drafts and e-mails of the aforementioned)(excluding all documents prepared by defense counsel hired by MBCR to defend lawsuits arising out of the accident).
### Response No. 10:

MBCR objects to this request on grounds that it is vague and ambiguous.  MBCR further objects to this request on grounds that it seeks documents protected by the attorney-client privilege and work product doctrine.  Notwithstanding these objections and subject to the foregoing General Objections, MBCR will produce non-privileged documents responsive to this request to the extent they exist.

Other than seven half-page statements and one two-page statement, MBCR has

not produced any responsive documents pertaining to its investigation of this accident.

All railroads routinely investigate accidents to find out how they happened and to

prevent future accidents.  No accident reports, notes or findings have been produced by

MBCR.  Likewise, no emails or investigative reports have been produced. MBCR

certainly has not produced all responsive documents and should be compelled to do so.

**Request No. 12:**
All photographs, videotapes, diagrams, and maps that depict the location of the accident site, or the equipment, or machinery involved in the accident.
**Response No. 12:**
MBCR objects to this request on grounds that it seeks documents protected by the attorney-client privilege and work product doctrine.  Notwithstanding this objection and subject to the foregoing General Objections, MBCR will produce non-privileged documents responsive to this request to the extent they exist.

MBCR produced 14 photographs.  MBCR undoubtedly has possession, custody

or control of more than 14 photographs of a major train accident that caused two

fatalities, at least two serious injuries and multiple passenger injuries when a commuter

train traveling almost 65 mph struck a piece of standing rail equipment and track crew.

Accordingly, MBCR should be compelled to produce all responsive photographs,

videotapes and diagrams.

**REQUESTS 13 and 16 (taped radio and telephone communications):**
**Request No. 13:**
All tape recordings of radio communications surrounding the accident for a period of 20 minutes before the accident through 90 minutes after the accident.
**Response No. 13:**
MBCR objects to this request on grounds that it is overbroad, vague, ambiguous, and not calculated to the lead to the discovery of admissible evidence. Notwithstanding these objections and subject to the foregoing General Objections, MBCR will produce non-privileged documents responsive to this request to the extent they exist.
**Request No. 16:**
All tape recordings of radio communications between the foreman and the track inspector on the day of the accident.
**Response No. 16:**
See Response No. 13.

During the parties' first Rule 37 conference on January 18, MBCR's counsel said she

would look into whether any such tapes existed and, if so, they would be produced. In the

second Rule 37 conference on February 13, defense counsel represented the tapes would

be produced by February 22. MBCR should be compelled to produce copies of all

responsive taped conversations. In the event all responsive tapes for the requested time

periods are produced, the plaintiff will withdraw the motion with respect to these materials.

**Request No. 17:**
All dispatching system records, documents, and printouts pertaining to actions taken by the dispatcher pertaining to placing or removing restrictions on track usage for the tracks surrounding the work crew on the day of the accident.
**Response No. 17:**
Subject to the foregoing General Objections, MBCR will produce non-privileged documents responsive to this request to the extent.

In its interrogatory answers, MBCR claimed that the dispatcher could not tell

whether a shunting device was being applied to the tracks. A shunting device is placed

on tracks outside the area where trackman are working to signal to the dispatcher that

there are workers on the track and trains should not be allowed on the track. MBCR

claims the plaintiff's decedent was negligent for failing to place a shunting device on the

tracks. It is plaintiff's contention that the dispatcher would be aware that shunting

devices were not being used at a known work location and had an obligation to report

the absence of a shunting device around a work area.   It is also the plaintiff's

contention that the dispatcher removed restrictions on the track which lead to the train

traveling into an area of track where the work crew was located.   Responsive

documents to this request will shed light on what specific actions she took concerning

protective blocking on the track in the area of the accident and when she took any such

actions.

**Request No. 18:**
All event recorder data from 30 minutes before the accidents through 30 minutes after the
accidents.
**Response No. 18:**
MBCR objects to this request on grounds that it is overbroad and not calculated to the lead
to the discovery of admissible evidence.   Notwithstanding this objection and subject to the
foregoing General Objections, MBCR will produce non-privileged documents responsive to
this request to the extent they exist.

The event recorder is similar to an airplane's "black box". It records the speed,

distance, brake pressure, throttle, brake application, horn application and other data

pertaining to the train. After an accident it is downloaded and can be printed out in

graphical and tabular format. The plaintiff seeks a tabular printout of the event recorder

data from control car 1644. MBCR produced a graphical printout but failed to produce

the tabular printout. The graphical printout provides a big picture of what happened, but

the tabular printout breaks the operation of the locomotive down in second by second increments so that one can determine when the brakes were applied, when the horn was blown and when the collision occurred.  More importantly, each second interval by row can be compared to each column of data from the various sources i.e. brakes, horn, distance.  This can be used to compare, for example, how long it took for engineer to apply the horn after the brakes were applied.  Also, one can use the data to find out how much time passed from the time the track equipment would have been visible on the from the engineer's cab until the horn was sounded.  It is difficult if not impossible to assess the details of the accident without the tabular printout of an event recorder in second by second time sequences.  During the parties second Rule 37 conference, the plaintiff agreed to narrow the scope of this request to five minutes before the train accident until five minutes after the accident.   MBCR's counsel stated she would get back to plaintiff's counsel shortly as to whether MBCR would produce the tabular printout for the narrowed time frame.   The plaintiff requests that the Court compel MBCR to produce a tabular printout of all event recorder data for this limited time period in second by second format.

## Request No. 19:

All records of subsequent remedial repair or action pertaining to the accident sites, appurtenances, equipment, conduct, or procedure involved in the accidents which forms the basis of the present complaint including but not limited to all work orders, receipts, photographs, correspondence, invoices, bulletins, memoranda, e-mails, and written instructions.

## Response No. 19:

MBCR objects to this request on grounds that it is vague, ambiguous, seeks irrelevant documents and is not calculated to the lead to the discovery of admissible evidence.

Subsequent remedial actions are discoverable. *See In Re Towner Petroleum Co. Securities Litigation MDL 607,* 1986 U.S. Dist. Lexis 30250 (E.D. Pa. Jan. 21, 1986) (granting plaintiffs' motion to compel defendants to respond to interrogatory seeking identification and description of subsequent remedial measures); *Spencer v. Sea-Land Service, Inc.*, 1999 U.S. Dist. Lexis 12608 (S.D.N.Y. Aug. 16, 1999) (the court denied defendant's motion *in limine* to exclude subsequent remedial measures evidence at trial because of the several possible basis for introduction of such evidence). Simply put, the plaintiff is entitled to find out what subsequent remedial actions took place so he can ask witnesses whether or not it would have been feasible to implement these procedures before MBCR killed Christopher MaCaulay. Also, subsequent remedial actions and measures are admissible for impeachment purposes, but if the railroad is not compelled to disclose such measures and actions, the plaintiff will be deprived of a reasonable opportunity to cross-examine witnesses about these matters. *See Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) (reversing trial court for failing to allow the plaintiff to impeach defendant's expert with letter constituting subsequent remedial actions). Accordingly, the plaintiff seeks an order compelling MBCR to provide all responsive documents and materials.

**Request No. 20:**
All maps, drawings, diagrams, measurements, surveys, photographs, or other descriptions made either before, after, or at the time of the events in question concerning: the events and happenings alleged in the complaint, the scene of the accident, or the areas or persons or objects involved.
**Response No. 20:**

MBCR objects to this request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, seeks irrelevant documents and is not calculated to the lead to the discovery of admissible evidence.    Notwithstanding these objections and subject to the foregoing General Objections, MBCR will produce non-privileged documents responsive to this request to the extent they exist.

MBCR has not produced any drawings, diagrams or measurements pertaining to the

accident.  It is difficult to fathom that MBCR does not have possession custody or control of

any such information following a double fatality.  Accordingly, MBCR should be compelled

to produce all responsive documents in its possession custody or control.

**Request No. 21:**
The full and complete attendance record of the plaintiff for the three years prior to the date of the accident which forms the basis of the present complaint including but not limited to all jobs and overtime worked and all time marked off sick or old injury.
**Response No. 21:**
Subject to the foregoing General Objections, MBCR will produce non-privileged documents responsive to this request to the extent they exist.

MBCR has not produced the decedent's attendance record.  It is relevant to assessing

his past wage loss, and for assessing whether he was a good employee who would likely

have been promoted over the course of his career.  The pay records produced by MBCR

do not indicate whether he missed work for sickness or injuries in the years leading up to

his death.  If the decedent was out sick or off injured during periods of time in 2004, 2005

or 2006, his actual gross wages would have been higher and his projected wage loss for

the period of time he would be a trackman will be higher than would be the case if his past

attendance did not involve any absences due to sickness or illness.  In this case, the

decedent cannot testify about his attendance history, therefore, it is important to obtain

documents to help confirm his past attendance to get a more accurate estimate of his

future wage loss.

### Request No. 27:

All records of disciplinary actions including transcripts, exhibits, correspondence and documents pertaining to any type of disciplinary actions, charges, hearings, (formal or informal hearing), and investigations concerning the accidents or injuries which forms the basis of this complaint.

### Response No. 27:
MBCR objects to this request on grounds that it is vague and ambiguous. Notwithstanding this objection and subject to the foregoing General Objections, no such materials exist.

In addition to setting forth in writing that "no such material exists", during the

parties' first Rule 37 conference, defense counsel represented their were no responsive

documents and that no discipline occurred following the accident.  The dispatcher,

however, testified in her deposition that she resigned to avoid her imminent dismissal

as a result of the collision. All the letters, transcripts, and exhibits pertaining to the

dispatcher's disciplinary proceedings, or any other disciplinary proceedings arising from

the accident, are relevant to proving how the accident happened and negligence. Most

of the testimony transcripts and exhibits from the hearings are admissions of a party

opponent per Fed. R. Evid. 801(d)(2)(D). Thus, not only are the responsive documents

relevant to proving liability in this lawsuit, the documents are likely to be admissible at

trial. Although the plaintiff has some evidence of MBCR's negligence, the disciplinary

records will help prove the railroad was completely responsible for the accident. MBCR

still claims the decedent was contributory negligent and the plaintiff has the right to

establish all the different ways MBCR was negligent to combat any risk of a jury placing

blame on the decedent. Accordingly, MBCR should be compelled to produce all

responsive documents to this request.

### Request No. 31:
All documents, tapes, and written information provided to the NTSB and FRA by the
defendant concerning the accident.
### Response No. 31:
MBCR objects to this request on grounds that it is overbroad, unduly burdensome, vague,
ambiguous, and not calculated to lead to the discovery of admissible evidence. MBCR
further objects to this request to the extent it seeks documents protected from disclosure by
the attorney-client privilege and work product doctrine. MBCR also objects to this request
to the extent it demands production of any document protected from disclosure by any
federal state and/or local statute or regulation, including but not limited to 49 U.S.C. Sec.
20903. Notwithstanding these objections and subject to the foregoing general objections,
MBCR will produce no privileged documents responsive to this request to the extent they
exist.

49 U.S.C. Sec. 20903 precludes parties from using the actual report prepared by the

NTSB at trial. It does not provide protection of the information provided by the Railroad to

the NTSB from production during discovery.    To the extent some responsive materials

have been produced by MBCR, it has not identified which materials were provided to the

NTSB.    More importantly, all documents, tapes, transcripts and written information it

provided to the NTSB are clearly relevant and discoverable.    Accordingly, MBCR should be

compelled to produce all documents and materials it provided to the NTSB and FRA.

### Request No. 37:
All documents describing or setting forth the rates of pay for trackmen, track foremen, track supervisors, conductors and engineers along with the scheduled rate increases from 2003 through 2011.

### Response No. 37:
MBCR objects to this request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, seeks irrelevant documents and is not calculated to the lead the discovery of admissible evidence.    MBCR further objects to this request on grounds that it seeks documents through 2011 which do not exist. Notwithstanding these objections and subject to the foregoing General Objections, MBCR will produce plaintiff's decedent's payroll/earnings records to the extent they exist.

During the parties' Rule 37 Conferences, plaintiff's counsel narrowed this request to

just trackmen (which includes A-rate and C-rate Roadway Machine Operators), track

foremen and track supervisors. MBCR refused to respond to this request as narrowed. The

plaintiff must prove how much her husband would have made had MBCR not caused his

death. Also, the plaintiff intends to prove the decedent was likely to get promoted had he

not been killed. The most likely path of promotion was from trackman to track foreman to

track supervisor. The plaintiff seeks the pay information so that she can establish her

husband's wage loss.

**REQUESTS 38 and 39 (Documents concerning cost/value of fringe benefits):**
**Request No. 38:**
All documents describing or setting forth the cost of fringe benefits from 2003 through 2007, including but not limited to, the costs for health insurance, dental insurance, vacation pay, pension contributions for the following trackmen, track foremen, track supervisors, conductors and train engineers.

**Response No. 38:**
MBCR objects to this request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, seeks irrelevant documents and is not calculated to the lead to the discovery of admissible evidence.    Notwithstanding these objections and subject to the foregoing General Objections, MBCR will produce documents concerning the cost of plaintiff's decedent's fringe benefits to the extent they exist.

**Request No. 39:**
All documents shown to union representatives for trackmen, track foremen, track supervisors, conductors and train engineers from 2003 to the present to demonstrate the value of each craft's fringe benefits including, but not limited to, the cost of health insurance, dental insurance, vacation pay, and pension contributions.

**Response No. 39:**
MBCR objects to this request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, seeks irrelevant documents and is not calculated to the lead to the discovery of admissible evidence.    Notwithstanding these objections and subject to the foregoing General Objections, see Response No. 38.

During the parties' Rule 37 Conference, plaintiff's counsel agreed to narrow this request to just trackmen, track foreman and track supervisors.  MBCR refused to produce responsive documents to this request as narrowed.  The plaintiff has the burden to prove damages and one part of damages concerns the value of the fringe benefits that the decedent will no longer be able to obtain for his family.  MBCR has this information and refuses to produce it.  Moreover, MBCR refused to simply answer an interrogatory seeking similar information. *See* pp. 20-22 *infra*. Accordingly, MBCR should be compelled to produce all responsive documents because they are directly relevant to proving the plaintiff's damages.  As for why the plaintiff seeks records in addition to trackmen, it is

simply because the plaintiff's decedent was a successful and well-liked trackman who was

likely to get promoted over his career.    The chain of promotion he was likely to travel was

within his own department form trackman to track foreman and eventually to track

supervisor.    It is more likely a worker like plaintiff's decedent would have been promoted

during his career than it is that he would have simply just stayed in one job for thirty years.

His future wages and salary of his likely career path are relevant to proving the plaintiff's

damages.

## REQUESTS 40 and 41:
### Request No. 40:
All contracts or agreements between MBCR and any other entity pertaining to allocation of
costs or damages for accidents arising out of MBCR's conduct.
### Response No. 40:
MBCR objects to this request on grounds that it is vague, ambiguous, seeks irrelevant
documents and is not calculated to the lead to the discovery of admissible evidence.
### Request No. 41:
The operating agreement between MBCR and the MBTA in affect at the time of the
accident.
### Response No. 41:
MBCR objects to this request on grounds that it seeks irrelevant documents and is not
calculated to the lead to the discovery of admissible evidence.

Upon information and belief MBCR and the MBTA are self-insured and have an

agreement requiring MBCR to pay FELA damages up to a certain amount and for the

MBTA to pay FELA damages in excess of a certain amount.  Fed. R. Civ. P. 26(a)(1)(D)

requires a party to produce "any insurance agreement under which any person carrying

on an insurance business may be liable to satisfy part or all of a judgment  which may

be entered in the action to indemnify or reimburse for payments made to satisfy the

judgment."   If MBCR is self-inured up to a certain monetary level and the MBTA

is required to pay damages beyond a certain level, the information is discoverable. *See*

*Id*. Accordingly, MBCR should be compelled to produce the entire operating

agreement.

**Request No. 42:**
The complete personnel file for the foreman.
**Response No. 42:**
MBCR objects to this request on grounds that it is overbroad, seeks irrelevant documents
and is not calculated to the lead to the discovery of admissible evidence. MBCR further
objects to this request on privacy grounds. Notwithstanding these objections and subject to
the foregoing General Objections, MBCR will produce non-privileged documents relating to
Mr. Zipps' training.

To date, MBCR has only produced some Roadway Worker test results from the

foreman's file. It is difficult to fathom how any responsive documents are subject to a

work-product or attorney client privilege. During the parties' Rule 37 conference,

defense counsel claimed the "entire" personnel file was over broad. Undersigned

counsel identified various types of documents she seeks such as performance reviews,

training history, work history, and disciplinary records from the foreman's entire career.

The responsive documents are relevant to finding out whether the foreman was

properly trained, or whether he was negligently assigned to perform the duties he was

performing when the accident happened. MBCR should be compelled to produce all

responsive documents to this request, or at least all responsive documents to the

request as narrowed during the Rule 37 conference.

**Request No. 43:**
The complete personnel file for the dispatcher who said, after hearing about the accident,
"it was my fault."
**Response No. 43:**

MBCR objects to this request on grounds that it is overbroad, seeks irrelevant documents and is not calculated to the lead to the discovery of admissible evidence. MBCR further objects to this request on privacy grounds. MBCR also objects to the characterization in this request of any statement made by the dispatcher after the accident on grounds that it is intended to harass and annoy. Notwithstanding these objections and subject to the foregoing General Objections, MBCR will produce non-privileged documents relating to the dispatcher in question, Ms. Maseda's, training.

To date, MBCR has not produced any documents responsive to this request. It is difficult to fathom how any responsive documents are subject to a work-product or attorney client privilege. During the parties' Rule 37 conference, defense counsel claimed the "entire" personnel file was over broad. Undersigned counsel identified various types of documents she seeks such as performance reviews, training history, work history, and disciplinary records from the dispatcher's entire career. Notably, defense counsel represented that there were no disciplinary records resulting from the accident, however, when the dispatcher was deposed in January and she testified she was terminated after disciplinary proceedings pertaining to the accident that is the subject of this lawsuit. The responsive documents are relevant to finding out whether the dispatcher was properly trained to do her job, or negligently retained in her job. The dispatcher's disciplinary records will also contain detailed testimony and factual information about the accident that is the subject of this lawsuit. Most of the hearing transcripts and exhibits from the disciplinary proceedings will likely be admissible as admissions of a party opponent per Fed. R. Evid. 801(d)(2)(D). MBCR should be compelled to produce all responsive documents to this request, or at least all responsive documents to the request as narrowed during the Rule 37 conference.

## IV. INTERROGATORIES AT ISSUE
### Interrogatory No. 9:
Specify what subsequent remedial measures, if any, were made following plaintiff's accident, which individuals were responsible for the decision to make said repairs or take said actions, when the decision was made, which individuals took said action and the date the action was taken.
### Response No. 9:
MBCR objects to this interrogatory on grounds that it calls for information protected by the attorney-client privilege and work product doctrine. MBCR further objects to this interrogatory on grounds that it is not calculated to lead to the discovery of admissible evidence.

Subsequent remedial actions are discoverable. *See In Re Towner Petroleum*

*Co. Securities Litigation MDL 607,* 1986 U.S. Dist. Lexis 30250 (E.D. Pa. Jan. 21,

1986) (granting plaintiffs' motion to compel defendants to respond to interrogatory

seeking identification and description of subsequent remedial measures); *Spencer v.*

*Sea-Land Service, Inc.*, 1999 U.S. Dist. Lexis 12608 (S.D.N.Y. Aug. 16, 1999) (the

court denied defendant's motion *in limine* to exclude subsequent remedial measures

evidence at trial because of the several possible basis for introduction of such

evidence). Simply put, the plaintiff is entitled to find out what subsequent remedial

actions took place so he can ask witnesses whether or not it would have been feasible

to implement these procedures before MBCR killed Christopher MaCaulay. Also,

subsequent remedial actions and measures are admissible for impeachment purposes,

but if the railroad is not compelled to disclose such measures and actions, the plaintiff

will be deprived of a reasonable opportunity to cross-examine witnesses about these

matters. *See Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)

(reversing trial court for failing to allow the plaintiff to impeach defendant's expert with

letter constituting subsequent remedial actions).   Accordingly, the plaintiff seeks an

order compelling MBCR to completely answer this interrogatory.

### INTERROGATORIES 14 and 16:(Rates of Pay and Salaries)
**Interrogatory No. 14:**
Set forth the rates of pay (including overtime rates) for trackmen, track foreman, track supervisors, conductors and engineers along with the scheduled rate increases from 2003 through 2011.
**Response No. 14:**

MBCR objects to this interrogatory on grounds that it is overbroad, unduly burdensome, seeks irrelevant documents, and is not calculated to lead to the discovery of admissible evidence. MBCR further objects to this interrogatory to the extent it seeks information through 2011, which does not exist. Notwithstanding these objections and subject to the foregoing General Objections, and pursuant to Fed. R. Civ. P. 33(d), MBCR states that the answer to this interrogatory as to plaintiffs decedent's position from 2003 through 2007 may be derived or ascertained by the documents produced by MBCR, including but not limited to MBCR 0366-0421. As discovery is ongoing and no depositions have yet been taken, MBCR reserves the right to supplement the answer to this interrogatory.


**Interrogatory No. 16:**
Set forth the annual salaries from 2003-2007 for each trackman, track foreman, track supervisor, conductor and train engineer employed by MBCR (without disclosing the names of each such individual) and the average annual salary for each such craft during each year.
**Response No. 16:**
See Response No. 14.

During the parties' Rule 37 conferences, plaintiff's counsel agreed to narrow

this interrogatory to just trackmen (which includes A-rate and C-rate Roadway

Machine Operators), track foremen and track supervisors.  Defense counsel refused

to respond to the interrogatory as narrowed.  The plaintiff seeks this information to

prove her damages.   Specifically, the plaintiff intends to offer evidence that her

decedent was an exceptional worker who planned to become a foreman and track

supervisor as he gained experience on the railroad and that he was likely to be

promoted and receive wage increases over his career with MBCR. This evidence

will help prove the damages the estate suffered as a result of Christopher's untimely

death. Accordingly, MBCR should be compelled to answer this interrogatory as

narrowed during the parties' conferences.

**Interrogatory No. 15:**
Set forth the cost of fringe benefits from 2003 through 2007, including but not limited to, the costs for health insurance, dental insurance, vacation pay, pension contributions for the following crafts and or positions:
   a. trackmen
   b. track foreman
   c. track supervisor
   d. conductor
   e. engineer

**Response No. 15:**

MBCR objects to this interrogatory on grounds that it is overbroad, unduly burdensome, seeks irrelevant documents, and is not calculated to lead to the discovery of admissible evidence. Notwithstanding these objections and subject to the foregoing General Objections, and pursuant to Fed. R. Civ. P. 33(d), MBCR states that the answer to this interrogatory as to plaintiff's decedent's fringe benefits may be derived or ascertained by the documents produced by MBCR, including but not limited to MBCR 0350, 0355, 0359, 0360, 0364, 0365. As discovery is ongoing and no depositions have yet been taken, MBCR reserves the right to supplement the answer to this interrogatory.

The documents referred to do not set forth the cost of the decedent' fringe benefits

as a trackman. The plaintiff seeks an order compelling MBCR to set forth the cost of the

fringe benefits for trackmen, track foremen and track supervisors. During the parties' rule

37 conferences, plaintiff's counsel narrowed this interrogatory to exclude conductors and

engineers. The plaintiff seeks to obtain the responsive information to help prove the

damages resulting from her husband's untimely death. She seeks to prove that he was

more likely to be promoted over the course of his career and, therefore, the cost of benefits

for foreman and supervisor will also be relevant.  Accordingly, MBCR should respond to this

interrogatory as narrowed during the parties' rule 37 conferences.

## V.  CONCLUSION

For the foregoing reasons and any additional reasons set forth at oral argument,

MBCR should be compelled to produce responsive documents and materials to the

requests at issue and to completely answer the interrogatories at issue.


                              FOR THE PLAINTIFF, SANDRA L. MACAULAY,
                              AS ADMINISTRATRIX FOR THE ESTATE
                              OF CHRISTOPHER A. MACAULAY,


                         By _____
                              George J. Cahill, Jr. (BBO #069480)
                              Scott E. Perry
                              CAHILL, GOETSCH, & MAURER, P.C.
                              43 Trumbull Street
                              New Haven, Connecticut  06510
                              (203) 777-1000

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2008, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Scott E. Perry