UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
                                            )
SANDRA L. MACAULAY, AS ADMINISTRATRIX       )
FOR THE ESTATE OF CHRISTOPHER A.            )
MACAULAY,                                   )
                                            )
         Plaintiff,                         )
                                            )
    v.                                      )  CA NO: 07-10864 NG
                                            )
MASSACHUSETTS BAY COMMUTER RAILROAD         )
COMPANY,                                    )
                                            )
         Defendant.                         )
_____ )

**OPPOSITION OF DEFENDANT MASSACHUSETTS BAY COMMUTER RAILROAD COMPANY, LLC TO PLAINTIFF'S MOTION TO COMPEL**

**INTRODUCTION**

This case arises from a tragic train accident that occurred on January 9, 2007 in which plaintiff's decedent, who was an employee of defendant Massachusetts Bay Commuter Railroad Company, LLC ("MBCR"), was killed.  Plaintiff has filed a motion to compel which is chock full of items that are purportedly in dispute.  As MBCR's discovery responses quoted in the motion reveal, however, MBCR agreed to produce almost all of the discovery which Plaintiff now seeks to compel.  (See Document Response Nos. 1, 3, 7, 9, 10, 12, 13, 16, 17, 18, 20, 21, 27, 31, 37, 38, 39, quoted in Plaintiff's Memorandum of Law in Support of her Motion to Compel Production of Documents and Responses ("Mem.")).  In addition, MBCR agreed to supplement certain discovery responses as a result of the parties' discovery conferences in connection with the motion to compel.  (See Affidavit of Counsel in Support of MBCR's Opposition to Plaintiff's Motion to Compel, filed herewith).  Thus, there remain only three categories at issue and the rest

of the motion does not warrant the Court's attention. The three categories in dispute are: (i) subsequent remedial measures taken by MBCR after the accident, (ii) MBCR's operating agreement with the Massachusetts Bay Transportation Authority (the "MBTA"), and (iii) personnel files of non-parties. As set forth below, the motion should be denied as to these requests because:

- Any subsequent remedial measures taken by MBCR are irrelevant based on Plaintiff's theories of liability and will not lead to the discovery of admissible evidence. Indeed, Plaintiff's rote assertions that the subsequent remedial measures are for feasibility or impeachment purposes under Rule 407 are baseless;

- Plaintiff's request for the entire operating agreement between the MBCR and the MBTA is overbroad because, by her own admission, Plaintiff seeks to ascertain MBTA's indemnification obligations only;[1] and,

- MBCR has produced the training records of two non-parties, (the foreman of the crew and the dispatcher on duty at the time of the accident), there are no disciplinary records for these non-parties, and Plaintiff is not entitled to the full contents of their personnel files - - which contain information related to payroll, benefits, health insurance, etc. - - for obvious privacy reasons.

For these reasons, and as set forth more fully below, MBCR respectfully requests that the Court deny the motion to compel in its entirety.

## BACKGROUND AND PROCEDURAL HISTORY

On January 9, 2007, an MBCR crew was working on a portion of track located in Woburn, Massachusetts when a commuter rail train accidentally struck equipment being operated by the crew, killing two MBCR workers – plaintiff's decedent Christopher Macaulay and the foreman of the crew, James Zipps. The cause of the accident is disputed. A key issue in the case involves the crew's failure to apply safety devices known as shunting barricades to their work area. As part of its defense, MBCR asserts that had the crew used the shunting barricades

---

[1] MBCR would agree to produce the relevant indemnification provisions to Plaintiff subject to an appropriate confidentiality stipulation.

-- as MBCR rules required them to do -- then the accident would not have occurred. (A shunting barricade would have given the oncoming train, among other things, a stop signal which would have prevented the train from traveling into the segment of track where the crew was located). Plaintiff has asserted several theories of liability against MBCR, including dispatcher error, negligence in failing to enforce its own rules and regulations, negligence in failing to provide its crews with working shunting devices, and negligent operation of the train by the engineer. (See Mem. at 3).

MBCR's Document Production

In response to Plaintiff's first document request, MBCR produced several hundred pages of documents, including witness statements, training and testing records, dispatcher records, rules and procedures, a track chart, photographs, the personnel file and other employment documents of Plaintiff's decedent, toxicology reports and event recorder data (which is information from the train's "black box"). More specifically, MBCR produced the following (identified by bates number):

| | |
|---|---|
| 1 | Unusual Occurrence Summary Report for January 9, 2007 |
| 2-3 | Job Briefing Form |
| 4 | Form D form filled out by foreman Zipps |
| 5 | Written statement of Lina Maseda |
| 6 | Train Dispatcher's Transfer Record |
| 7-13 | Dispatcher Maseda's training records |
| 14-15 | Statement of Engineer Joseph Carbone |
| 16-17 | Statement of Conductor Arthur Horgan |
| 18-19 | Statement of Assistant Conductor Robert Pietrafetta |
| 20 | Statement of Senior Trainmaster Richard Currier |
| 21 | Statement of Manager of Finance and Administration Paul O'Leary |
| 22 | Statement of Assistant Chief Engineer John Callahan |
| 23-24 | Statement of Roadmaster James Howland |
| 25-29 | Qualification cards for crew members |
| 30-55 | Training records of Foreman Zipps |
| 56-76 | Training records of Crewmember Daniel Brunnelle |
| 77-97 | Training records of Crewmember Edwin Olson |

| 98-121 | Training records of Crewmember John Hickey |
|---|---|
| 122-146 | Training records of Plaintiff's Decedent Christopher Macaulay |
| 147-170 | Training records of Crewmember Michael Dumont |
| 171-172 | Training records of Plaintiff's Decedent Christopher Macaulay |
| 173-175 | Training summary sheets of the train crewmembers |
| 176-180 | Form Ds issued by Dispatcher Maseda for Lowell line on 1/9/07 |
| 181-185 | Computer Dispatching System Records |
| 186-291 | NORAC Operating Rules |
| 292-330 | MBCR Roadway Worker Protection Manual |
| 331-346 | MBCR Bulletin Orders |
| 347-349 | Track Chart |
| 350-365 | Personnel File of Plaintiff's Decedent Christopher Macaulay |
| 366-421 | Payroll Employee Cumulative Report for Plaintiff's Decedent Christopher Macaulay from 7/1/2003 |
| 422 | Photographs |
| 423-429 | MBCR Special Inspection Reports (trains) |
| 430-578 | MBTA Commuter Rail Service Employee Timetable |
| 579-611 | Personnel File of Plaintiff's Decedent (portions of) |
| 612-660 | Train Dispatcher's Manual |
| 661-672 | Dispatcher's Record of Movement of Trains for 1/9/07 |
| 672-673 | Dispatcher's Train Sheet for Lowell Line for 1/9/07 |
| 674-707 | Toxicology reports of train crew, dispatcher, foreman, and plaintiff's decedent |
| 708-716 | Event recorder data (graphical) |
| 717 | Radio communications (CD) |

In addition, MBCR has supplemented its production with the following:

| 718 | Correspondence from Plaintiff's Decedent's Counsel |
|---|---|
| 719-720 | Notice of Formal Investigation to Dispatcher |
| 721 | Letter to Dispatcher dated January 10, 2007 |
| 722 | Safety Flash posted January 12, 2007 |
| 723 | MBTA Police Department Journal Incident Report (Draft) |
| 724-730 | Woburn Police Department Reports |
| 731-748 | Training records of Assistant Conductor Robert Pietrafetta |
| 749-766 | Training records of Engineer Joseph Carbone |
| 767-783 | Training records of Conductor Arthur Horgan |
| 784-791 | Training records of Lina Maseda |
| 792-797 | Track Chart (full) |

| 798 | Track Work Estimate |
|---|---|
| 799-930 | Track Inspection Reports |
| 931 | Dispatcher Work History |
| 932-956 | MBCR Program of Operational Tests and Inspections |
| 957-967 | Miscellaneous rules |
| 968-1046 | Employee Test Detail Reports for Crewmembers, Train Crew, and Dispatcher |
| 1047 | Narrative of Assistant Chief Engineer John Mitchell |
| 1048 | Signal Appliances Involved and Related History Sheet |
| 1049-1062 | Form Ds issued by Dispatcher for Fitchburg line on 1/9/07 |
| 1063-1071 | Computer Dispatching System Recordings |
| 1072-1098 | Crawford Interlocking VHLC Recordings |
| 1099-1199 | Pre-Accident Inspection Reports (Signals) |
| 1200 | Diagram |
| 1201-1270 | Work Order History for Swingloader |
| 1271-1291 | Inspection Reports (Train) |
| 1292 | Estimate of Damage to Train |
| 1293-1377 | Work Order Checklists for Trains |
| 1378-1405 | Event Recorder Data (Tabular) |
| 1406 | Unusual Occurrence Summary Report for 1/10/07 |
| 1407 | Estimate of Damage to Swingloader |

Quite simply, MBCR has complied with Plaintiff's document request (aside from the categories at issue below).

MBCR's Interrogatory Answers

MBCR also fully answered plaintiff's interrogatories. In fact, the motion to compel identifies only four (of 21) interrogatories in dispute: Nos. 9, 14, 15, and 16. Of those four, MBCR has agreed to supplement its discovery responses regarding Nos. 14, 15, and 16 relating to rates of pay and fringe benefits. (Counsel Aff. ¶ 2). Therefore, only one interrogatory - - No. 9 - - remains in dispute, which relates to subsequent remedial measures.

**ARGUMENT**

**I.     MBCR's Subsequent Remedial Measures Are Irrelevant to Plaintiff's Theories**

By Request No. 19 and Interrogatory No. 9, Plaintiff seeks "records of subsequent remedial repair or action" in connection with the accident. (Mem. at 11, 21). MBCR objected to the document request "on grounds that it is vague, ambiguous, seeks irrelevant documents and is not calculated to lead to the discovery of admissible evidence" and to the counterpart interrogatory on the additional ground that it impinges upon the attorney-client privilege and work product doctrine. (Mem. at 11, 21). Plaintiff cannot establish that MBCR's subsequent remedial measures (i.e. certain rule changes) relate to Plaintiff's theories of liability, and therefore, there is no basis to discover the information.

Fed. R. Evid. 407 provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Although Rule 407 speaks in terms of admissibility at trial and not discovery, discovery must be relevant and, if not admissible at trial, the discovery must be "reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1).

Courts have denied discovery of information constituting subsequent remedial measures not relevant to the issues in the case or likely to lead to admissible evidence. See Barrett v. Ambient Pressure Diving, Ltd., No. 06-CV-240-SM, 2008 WL 185835, *2 (D.N.H. Jan. 16, 2008) (denying motion to compel response to interrogatory seeking "all changes" or "modifications" in design of product because such evidence of subsequent remedial measures

6

was not "likely to lead to admissible evidence"); Richards v. Maine Central Railroad, 21 F.R.D. 590, 591-92 (D.Me. 1957) (denying discovery and holding "what directly matters are . . . acts or omissions in the operation of the motor car at or shortly before the time of collision . . . what someone . . . at a subsequent date thought of these acts or omissions is not relevant to the case."). Indeed, a party seeking to discover information subject to an evidentiary exclusionary rule, such as Rule 407, must explain how the information sought is admissible for another purpose other than that barred by the rule, and articulate a "plausible chain of inferences" regarding how the information sought would lead to admissible evidence. Vardon Golf Company, Inc. v. BBMG Golf Ltd., 156 F.R.D. 641, 651 (N.D. Ill. 1994) (denying motion to compel discovery of subsequent remedial measures).[2]

Here, Plaintiff has not articulated a "plausible chain of inferences" concerning how the requested subsequent remedial measures are relevant to her claims, let alone issues of "feasibility" or "impeachment." Indeed, Plaintiff cannot. Plaintiff's lawsuit is based upon eight theories of MBCR's purported negligence – none of which concern the adequacy of any MBCR rule or internal procedure.[3] Simply put, Plaintiff is not challenging the adequacy of any rule or procedure in effect at the time of the accident. Rather, Plaintiff's theories of liability are premised entirely upon the alleged failure of MBCR employees to take certain actions and/or

---

[2] The cases cited by Plaintiff, In re Towner Petroleum Co. Securities Litigation, 1986 U.S. Dist. Lexis 30250 (E.D. Pa. Jan 21, 1986) and Spencer v. Sea-Land Service, Inc., 1999 U.S. Dist. Lexis 12608 (S.D.N.Y. Aug. 16, 1999), are inapposite. (Mem. at 11-12). In each of these cases, the plaintiff demonstrated a sufficient nexus between the remedial measures and the bases for the plaintiffs' claims in those actions, unlike here.

[3] The bases articulated by Plaintiff are: (1) the dispatcher negligently allowed the train on a track where she knew a work crew was located; (2) MBCR had a practice of not using shunting devices on small jobs such as the one being performed at the time of the accident; (3) MBCR failed to enforce its rule requiring the use of shunting devices; (4) MBCR failed to provide its crew with working shunting devices; (5) the engineer failed to sound the horn for a reasonable time period after he observed the work equipment on the tracks; (6) the engineer failed to sound the horn in violation of MBCR Rule 19(b)(B); (7) MBCR failed to protect small maintenance crews with an advanced watchman and/or gang watchman to provide proper warning; and (8) MBCR failed to provide advance watchman and/or watchmen when crews consisted of less than seven workers in violation of MBCR RWP Rule 329. (See Mem. at 3).

properly <u>implement</u> rules or procedures. Accordingly, the feasibility of subsequent rule changes by MBCR is irrelevant to Plaintiff's claims.

For the same reasons, the subsequent rule changes are not a relevant topic for impeachment. Trying to squeeze into the impeachment exception to Rule 407, Plaintiff cites <u>Dollar v. Long Mfg., N.C., Inc.</u>, 561 F.2d 613, 618 (5th Cir. 1977). That case is distinguishable because the remedial issue -- a warning concerning the dangerousness of a product -- was directly relevant to the heart of the case (product defect) and the court held that the plaintiff was entitled to use that evidence to impeach the testimony of defendant's expert witness. Here, any subsequent rule change is <u>not</u> related in any way to Plaintiffs' claims concerning MBCR's or its employee's alleged negligence. In short, there is no basis for discovery of MBCR's subsequent remedial measures.

**II.    Plaintiff Is Not Entitled to the Entire Operating Agreement Between MBCR and the MBTA, But Only to the Indemnification Provisions**

By Request Nos. 40 and 41, Plaintiff seeks to compel MBCR's entire operating agreement with the MBTA. (Mem. at 18-19). Plaintiff contends that "[i]f MBCR is self-insured up to a certain monetary level and the MBTA is required to pay damages beyond a certain level, the information is discoverable." (<u>Id.</u>) MBCR will agree to provide Plaintiff with the relevant indemnification provisions from MBCR's agreement with the MBTA pursuant to an appropriate confidentiality stipulation. Plaintiff, however, articulates no basis whatsoever to compel the entire operating agreement. Instead, the sole reason offered by Plaintiff to compel the operating agreement is to determine MBTA's indemnification obligations. (Mem. at 18-19). In view of MBCR's agreement to produce the indemnification information sought by Plaintiff, there is simply no basis for production of the <u>entire</u> operating agreement, which contains irrelevant and confidential business information, among other things.

### III.     The Personnel Files of the Dispatcher and Foreman Are Irrelevant and Private

"Personnel files contain perhaps the most private information about an employee within the possession of an employer." Whittingham v. Amherst College, 164 F.R.D. 124, 127-28 (D. Mass. 1995) (denying discovery of non-party personnel files) (citing Gehring v. Case Corp., 43 F.3d 340, 342 (7th Cir.1994) (affirming decision that releasing personnel files would violate privacy interests), *cert. denied,* 515 U.S. 1159 (1995)).  Accordingly, when a plaintiff requests personnel files of a non-party, the plaintiff must satisfy a heavy burden of demonstrating how the relevancy of the information sought in the personnel files outweighs the non-party employee's right to privacy.  Id.  Indeed, the contents of the personnel files must be "clearly relevant" and the need for the files must be "compelling" based on a  "fact-specific showing."  In re One Bancorp Securities Litigation,134 F.R.D. 4, 12 (D.Me. 1991) (denying motion to compel production of personnel files).

The Supreme Judicial Court and Massachusetts Legislature also have recognized that individuals have a heightened privacy interest in their personnel records.  See Bratt v. Int'l Business Machines Corp., 392 Mass. 508, 518 (1984); M.G.L. c. 214, § 1B ("A person shall have a right against unreasonable, substantial or serious interference with his privacy.  See also M.G.L. c. 4, § 7, Twenty-sixth (c) (exempting "personnel and medical files" from definition of "public records").  Courts routinely find unreasonable and deny discovery of non-party personnel files in the absence of a specific nexus between the content of the files and the claims in the lawsuit.  See e.g. Fitzgerald v. Morrison, No. 002247B, 2002 WL 389872, at *1-2 (Mass. Super. Jan. 10, 2002) (denying discovery of non-party personnel files).

Here, Request Nos. 42 and 43 seek the complete personnel files of the foreman of Macaulay's crew and the dispatcher on duty at the time of the accident.  (Mem. at 19-20).

MBCR already produced the training and testing records for the foreman and the dispatcher. MBCR also has informed Plaintiff that there are no disciplinary records for either of these employees.  (See Response No. 27).  MBCR's personnel files generally contain information related to payroll, 401K, benefits, tax withholding, and health insurance, and other similar documents, which are private and irrelevant to the issues in this case.  In short, Plaintiff has failed to satisfy the heavy burden to show that the types of documents within the personnel files are relevant, and how the relevancy of that information outweighs the employees' privacy rights. See Whittingham, 164 F.R.D. at 127-128.

In addition, the motion mischaracterizes the dispatcher's deposition testimony by stating, "she testified she was terminated after disciplinary proceedings pertaining to the accident that is the subject of this lawsuit."  (Mem. at 20).  On the contrary, Ms. Maseda briefly testified as follows:

> Q. And what is the reason you stopped working for MBCR?
>
> A. I resigned in the face of imminent dismissal.
>
> Q. Was the dismissal anything to do with the collision that occurred on January 9, 2007?
>
> A. Yes.

(Maseda deposition testimony at p. 6, attached hereto as Exhibit A).  There was no further testimony regarding "disciplinary proceedings" because, in fact, there were none.  MBCR made this clear to Plaintiff by its Response to Request No. 27 stating, "no such materials exist." (Mem. at 14).  Accordingly, there are no documents to compel.

### IV. There Is Nothing to Compel Regarding the Rest of Plaintiff's Motion

The remainder of the motion to compel is superfluous.  As the motion itself shows, MBCR responded that it would produce the non-privileged documents, to the extent such

documents exist, in response to most of the requests purportedly in dispute.  MBCR has done so.

For example, MBCR has produced the following in response to Plaintiff's requests:

- Request No. 2 (Macaulay's personnel file):     MBCR 350-365, 579-611
- Request No. 12 (photographs):     MBCR 422 (CD of photographs)
- Request No. 13 and 16 (radio tapes):     MBCR 717[4]
- Request No. 17 (dispatching records):     MBCR 6, 176-185, 661-673

Despite MBCR's production, Plaintiff essentially asserts that "there must be more."  But, Plaintiff fails to make specific arguments in support of the motion to compel additional documents from MBCR, and fails to identify a factual basis for its bare assertion.  As set forth above, MBCR has produced voluminous documents in response to Plaintiff's requests in accordance with its responses.  As such, the motion to compel should be denied.

## CONCLUSION

For the foregoing reasons, MBCR respectfully requests that the Court deny Plaintiff's Motion to Compel in its entirety.

Respectfully submitted,

MASSACHUSETTS BAY COMMUTER RAILROAD COMPANY, LLC

By its attorneys,

/s/ Colleen C. Cook
Joel G. Beckman (BBO# 553086)
Michael Paris (BBO# 556791)
Colleen C. Cook (BBO#636359)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100

Dated:  March 11, 2008

---

[4] Requests 13 and 16 seek "radio" communications only, but Plaintiff has tried to include telephone recordings under this request.

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 11th day of March, 2008.

      /s/ Colleen C. Cook
      Colleen C. Cook